Thank you, Your Honor. May it please the Court, my name is Jacob Christensen, and I represent the Commissioner of Internal Revenue. Mr. Wise, you need to turn on your camera, please. The taxpayer in this case, Laidlaw's HArley Davidson Sales, INC, is a taxpayer. We only have one lawyer on camera. Where's the other lawyer? Mr. Wise, you need to turn on your microphone. I did. I pushed the... There we are. Thank you, sir. No, we're not. He's not there. All right. One more time. Now you're there. Oh, I'm sorry. Now you're gone. All right. But also... Oh, fine. Okay. Go ahead, then. Thank you, Your Honor. Yes, sir. Go. The taxpayer in this case, Laidlaw's HArley Davidson Sales, INC, engaged in a tax payments transaction that the IRS had designated as a listed transaction. Taxpayer failed to disclose its participation in the transaction, as it was obligated to do under the code, and the IRS imposed a mandatory penalty. The tax court, however, disallowed the penalty on procedural grounds, reasoning that when taxpayer's potential liability for the penalty was first proposed and communicated to the taxpayer, it had not yet been approved by a supervisor in the IRS. The tax court's communication-based rule for when supervisory approval must be obtained under the statute is without a textual basis in the statute. What matters to me—it was quite interesting to me that neither side nor the tax court paid much attention to what this letter actually said. But what the letter—it was written as we, not I, a particular person, and it said that if you don't take action, we will assess the penalty and begin collection procedures. If you fail to seek appeals consideration or fail to waive in writing, the commissioner, not me, will not consider a request to rescind the penalty. So this is not just a letter that says, you know, we're proposing a penalty. Let us know what you think. It's a letter that says to me and to anybody else reading it, we have decided that there is a penalty and that unless you appeal it, we will assess it and the commissioner will not consider a request. Now, if everything you say about the fact that nonetheless—you seem to be saying, but this isn't true. Although this was what was told to the taxpayer, they're not necessarily going to assess the penalty, and the commissioner will consider a request to rescind the penalty. And that doesn't seem like the way the world should be working. And so it may be that there's a kind of letter that could be communicated that is not an initial determination, but this certainly looks like an initial determination. Now, I understand that you've agreed it's an initial determination and you're arguing about when, but when you say something has to be approved, don't you usually mean approved before it becomes operative? This is operative. Yes, and as your Honor points out, there's no dispute in this case that this letter, the May 26th letter, constitutes the conveying of the revenue agent's initial determination. It doesn't say that. It says we and it says the commissioner. Right, and so under the statute, it would qualify as the initial determination or it would embody that initial determination. At this point, the supervisor had not yet approved or signed off on this letter. It's signed only by the revenue agent at this point in time. It wasn't until two months later that the supervisor, in fact, reviewed the penalty and approved those penalties. But the revenue agent doesn't say I have determined this. It says we have determined this, meaning the IRS, and it doesn't say we have determined it's subject to a supervisor's approval. It says we're going to get this penalty if you don't pay us, period. Why isn't that a final determination without approval? Again, the question is, at what point is the supervisor's approval of the penalties required here? I don't think you're answering the question because I'm really struggling with the same thing, and maybe we're confusing you. There's the statutory interpretation question that you keep focusing on, which is whether the supervisor still retained the authority. But there's also the letter itself, like any layperson reading this would read it, in all fairness, as the penalties already been assessed. So does that letter have any conclusive effect on the agency? You may be correct on the statutory interpretation question, and behind the scenes, the supervisor didn't approve it and still retained the authority to do so. But how would the taxpayer know that, getting a letter that contains the language that it does? So this letter, it's not a final determination because it's offering the taxpayer appeal rights. And so the taxpayer, after receiving this letter, has the opportunity to protest and request an administrative appeal. And in fact, that's what the taxpayer did in this case. But it says if you do not take any action by the response state noted above, we will assess the penalty. And your whole argument depends on the notion that you will not necessarily assess the penalty, that the supervisor still has the authority to say that they won't assess the penalty. So it's misrepresenting the underlying situation. And maybe that's another argument, another issue that's not here. But I don't think so. I mean, my sense of it is that it is informative as to the question of what the statute means when it says you have to approve the initial determination. It has to be approved. It's informative as to when. If this is what the initial determination looks like, then one approving it has to mean before it becomes operative. So I disagree that this is a final determination. No, I'm not saying it's a final determination. But whatever it is, you say there's nothing in the statute that says when. But ordinarily, when one says that something has to be approved at a certain time, has to be approved, usually we mean before it becomes operative. I don't say before it's communicated, before it becomes operative. And this letter as written is operative. It's not simply a proposal. Well, Your Honor, I guess I agree that the letter is communicating a certain definiteness of penalties. But, again, it refers to proposed penalties. And whether the IRS will ultimately assess those penalties is contingent on a further action or not by the taxpayer here. Or a failure to act. I mean, I guess in looking at this letter, maybe there's conflicting language. On the one hand, it starts out by saying this is a proposed penalty. But on the other hand, it says if you do not take any action by the response date, we will assess the penalty. So it's a contingent on either the taxpayer failing to act or the taxpayer requesting a further conference with the appeals office. So the letter states that if the taxpayer were to disagree with the proposed penalties, that the taxpayer can then request a conference with the IRS appeals office. And only after that process would a final determination whether to assess the penalties be made. And that is the point that the statute focuses on. That supervisory approval is required before assessment of the penalty. So at this point when this letter is sent out to the taxpayer, you're well before any assessment of the penalty. And, again, the statute focuses on the time of assessment. There are two timing requirements under the plain language of the statute. First, it must be the approval must be obtained before assessment. And that's explicit in the statute. The second requirement is that in order to give meaningful effect to the approval requirement and the word approved in the statute, the approval has to occur at a time while the supervisor still has discretion to approve or to prevent the penalty assessment. Well, according to that letter, he does not have that authority if the person doesn't protest. That's what the letter says. So it represents, at least, that he doesn't have the authority. Yeah, the revenue agent would lack the authority to assess the penalties without the supervisor's approval. And that's the exact intent of this statute is that Congress was concerned that penalties were being imposed on taxpayers. To clarify one thing, under your argument, although it's true that he had the authority to, the taxpayer could appeal, and in this instance there wasn't an approval by the supervisor before the first appellate conference, your argument is that there didn't have to be. And that as long as, until the assessment, that the assessment is not made until after the administrative appeal and that until the assessment there's no approval requirement. Is that right? That is correct, Your Honor. So although at points you rely on the fact that there was an opportunity to appeal before the assessment became final, in fact, your position is that even after that, there was, they still didn't have to have this approval until they actually put the assessment on the road. Well, the penalties were not... At the very last minute. It can be, you know, five minutes before they stamp it onto the road. Yes, Your Honor, and that is because the supervisor retains discretion up until that point, at least until that point. And under that interpretation... So the letter was lying. I mean, that's what's really troublesome. The letter was lying because the letter said that it will be assessed, not that we'll make a decision whether to assess it. And it says that the commissioner then cannot retract it after that. So either it is not what you're claiming it to be or it was lying. I take your point, Your Honor. I think one thing that the statute is clear on, however, is that before a penalty can actually be assessed, there must be supervisory approval. I don't think there's any dispute about that. So to the extent this letter was conveying a foregone conclusion prior to such approval, I take your point that the letter could be improved in that aspect. Is it your point that the taxpayer could take an appeal to the appeals office before there was an assessment? Yes, that is correct, Your Honor. And that is... And suppose that the appeals office says, it's wrong, we don't think you should be paying the penalty, then can the supervisor still approve the assessment? So, you know, the question of whether and to what extent the supervisor retains full discretion after the case is transferred to appeals is not clear cut. We think the supervisor does have that discretion. So the appeal, you can take an appeal of a penalty and you can go to the office and you can be correct and then the supervisor approves afterwards and junks the determination of the appeals council. Right? In practice, that's not... Well, not in practice, but that can be done. So, therefore, the offer that's made to the taxpayer is totally illusory. So, Your Honor, this case does not actually present the issue as to whether the immediate supervisor would retain discretion or how much discretion... But all of these considerations are relevant to when the approval has to occur. As I say, it is certainly possible to read it to say when you say something has to be approved, you mean when it's issued, not long after that. That is certainly the way I would think most people would think, i.e., the initial determination has to be personally approved by the immediate supervisor, meaning before it goes out as an initial determination. You're saying, well, no, it doesn't have to be then. But all of these other considerations that we're talking about, how absurdly the system then operates, if you can not have an approval until 30 seconds before the assessment is stamped onto the rolls, you have a futile appeal. I mean, your position has to depend on that, because you say that it depends on whether the supervisor can still approve or disapprove. So it has to be that it can still approve or disapprove at the time of the assessment, and then you have Judge Bea's anomaly. So do we need to build in all these anomalies in order for you to prevail? Your Honor, the court doesn't need to address the extent of the supervisor's discretion. Well, we do, because your whole argument depends on the discretion. Your argument depends on the notion, as I understand it, that it's taking the language out of Chai and saying, as long as the supervisor can still approve or disapprove. So it does depend on that. Well, it may be, your Honor, that the alternative rule would be that if the supervisor loses discretion once the case goes to appeals, maybe that's the better point rather than right prior to assessment. But still in this case, the supervisor unquestionably had the authority to approve or disapprove up until the case went to appeals, and the approval occurred before the case was transferred to the appeal. But then your theory falls apart, because your theory is that until no penalty under this title shall be assessed means that the assessment is the relevant time period. And so at that point, you don't have a coherent thesis. Well, your Honor, I disagree, because we interpret the statute as imposing two timing requirements. First, that it must occur before the assessment, and second, while the supervisor still has discretion to approve or disapprove. And whether that's exactly right prior to the assessment, or maybe that point is just before the case is transferred to the appeals office. But in either case, the rule that we're advocating here is that as long as the penalty is approved before the assessment, and while the supervisor still has full discretion to approve the penalty, that that's all the statute requires. There's nothing that requires an earlier approval time. The statute simply doesn't refer to a communication with a taxpayer, and we think the tax court erred by imposing an even earlier deadline than that. Okay. Thank you very much. Your time is up. We'll give you a minute of rebuttal. Thank you. Sir? Mr. Wise? No, you're muted. We cannot hear you. No, we can't hear you. If you're speaking, we can't hear you. And also, in terms of seeing you, we can only hear you. Okay. Now can you hear me? Yes, we can.  William Wise for the taxpayer. Okay. I tend to agree with Judge Pei's question. That is, I don't believe that the supervisor retains jurisdiction. But what is important here is that the wording of the statute is ambiguous. So when CHI went to the purpose of the statute, they realized that the timing had to be before at the time the penalty was communicated. Well, first of all, that's exactly what they said. But second of all, suppose this really was a proposal. Suppose the letter said, you know, I'm a revenue agent, and I've been looking over your files, and I am going to propose to my supervisor that you should pay a penalty. And here's the penalty I'm going to propose. And before I do that, I'd like to hear what you have to say about it. Would there have to be approval before that? No. That type of communication was specifically rejected in the case that I referred to in the, sorry, Delaware Woods, where the question of the exact timing came up. It has to be a communication that there has been a determination by the examination division, as represented by the agent, that there has been a determination to assert the penalty. It can't be the sort of communication that was rejected by the court in Delaware Woods. But the letter in our case from the revenue agent reflected a determination to assert the penalty. And therefore, that was the, because the agent didn't get approval, it didn't meet the provision that we're dealing with, 6751. Well, Mr. White, the letter said that there had been a determination. We, meaning the IRS, had determined that, but gave the taxpayer an opportunity to go to the appeals council if the taxpayer disagreed with that determination. So it wasn't in any way a final determination, was it? No, it was not a final determination. Any determination by the audit division is subject to some review, either by appeals or by a court. But that determination is what Congress said. At least the court interpreted the ambiguity as requiring approval before the audit division's determination. But that is not, I mean, isn't, I think that you have a very good case if you were able to get Congress to adopt your language. But that's not the language and the text of the act that Congress enacted. It says no penalty under this title shall be assessed unless there's an approval. The determination which the RA, the revenue agent, made was not an assessment. We all agree on that. That's correct. So if it's not an assessment and the statute doesn't say when the approval has to be got, then why isn't Mr. Christensen right that the approval can be gotten at any time before the supervisory person loses discretion? To understand why that is, you have to start with the dissent in Grave 2 and understand that where the statute is ambiguous. And the statute is ambiguous because you cannot, as every judge who's looked at this has come to the same conclusion, you cannot determine an assessment. Now, the judges who have looked at this have argued from a case, from a position of policy that the intent of Congress, the purpose of Congress, was to not allow revenue agents to bulldoze poor taxpayers unless the supervisory agent had okayed the determination. And that's a wonderful policy argument which didn't make its way into the text of the statute. So, I mean, I think your argument is against Congress not doing a good enough job in protecting the taxpayer. The law provides for the court to interpret a statute when there is an ambiguity of this sort. But you say there's an ambiguity. Where's the ambiguity in this language? No penalty under this title shall be assessed unless the supervisor approves. Where's the ambiguity as to that? The statute says no penalty shall be assessed unless the initial determination of such assessment. And you must focus on those words, initial determination. And you can't determine an assessment. You can only determine a liability. An assessment is a mechanical act. In other words, what you're saying is that, the assessment is essentially the penalty. Not being able to do the assessment is not a time factor. Excuse me, I am talking. Unfortunately, I was going to say something that was probably helpful to you, but I've sort of forgotten it because I was interrupted. Sorry, Your Honor. Go ahead. Well, what I'm saying is that the assessment itself is a mechanical act. And the courts agreed, the tax court, the Second Circuit, agreed that the words determination of an assessment creates an ambiguity that requires interpretation as to when. When must the supervisory approval in writing be given? And they have all come to the conclusion that it is not just before the mechanical act of putting the liability on the books. What I think you are referring to is that the act of the determination is the determination of the liability. And that's why they come to the conclusion that the approval must occur prior to the act of the notification of the taxpayer of the determination of the The statute does not say that no penalty shall be assessed until the initial determination. It says no penalty shall be assessed unless the initial determination. So the no penalty shall be assessed seems to be the consequence of not doing what is required by the following sentence to be done. But it's not a time factor. Is that essentially what you're saying? I would agree with that, Your Honor. The time factor comes in as to what follows those words. And the initial determination of such assessment is personally approved. It seems to me as implicit in its meaning before it becomes operative. That's ordinarily how one speaks. If you say this has to be approved by somebody, that usually means before you do it, not afterwards. Well, except that when you go into the legislative history, the Congress was concerned they only enacted this provision because they agreed with the agents were misusing this penalty as a threat in order to achieve an assessment. And when you think of that, that's how they came up with the idea. I think ultimately in Bel Air, the discussion that they came to a conclusion on the examination level to make sure that the penalty should be proper, but that the supervisor before the agent communicated that conclusion had to approve. Whereas they couldn't wait any longer or the potential for this use of penalties to force people to do what they shouldn't have had to do would be un, the statute wouldn't have that effect. But Congress believed that, or I'm sorry, that the tax court came to the conclusion that the earlier, earlier than the communication by the service of its determination, the examination division determination would impede responsible review by the agent. But if it wait, if it didn't have to be approved by the time it was communicated, there was just too much potential that this, that the penalty would be used for the improper purpose. So they came to a reasonable decision as to when that the approval had to take place. The crucial thing here is when does the approval have to take place? And, and the tax court's conclusion is a, is sort of a middle ground between the people say the first mention of penalties should be subject to approval and the government's position, which is that there is no real, that before the mechanical event occurs, somebody has to approve it. But that's way too late. It doesn't prevent the agents from doing what they were, that this statute tried to get, to prevent them from doing. The question which Judge Beyer raises is how is that embodied in the language of the statute? How is your understanding embodied in, or the tax courts embodied in the language of the statute? I believe that if it, if the statute had been properly written, it would have been Well, that's the problem. You can't tell it wasn't properly written. You need to tell us how it is consistent with the statute that has, that was written. Well, the initial determination controverts the government's argument. The words initial determination. It doesn't make any sense. It should be initial determination of, of a penalty. They use the word assessment. It's, it's, it's ambiguous. It allows the government to argue, well, you can wait until the end. That's not ambiguous. That's straightforward. If it's written, no penalty under this title shall be communicated unless the initial determination is personally approved. Then you'd have a very good ground on which to stand. But it doesn't say that. It says shall be assessed. And it isn't assessed until that mechanical act that you've described. And as far as I can see, the statute doesn't have any time at all as to when the assessment has to be approved. And therefore, it's not ambiguous. It's indefinite. And indefinite is not the same as, as, as ambiguous. Well, I, I would, all I can say is that every court that's looked at it has agreed that the statute is. What courts have looked at it? The tax court and the second circuit? The tax court and the second circuit. And the second circuit, you're fighting about which, which way their analysis goes because of this very fine cut distinction, which I don't fully understand between a deficiency notice and this kind of document, which is not formally speaking a deficiency notice, although it certainly looks like a deficiency notice. It's the equivalent of a deficiency notice in an assessable penalty where there's no, no judicial review within the statute. Yes. Okay. Well, your time is about up. So thank you very much. Thank you. Sure. We'll give you, let's see. I don't know how much time you have, but two minutes is fine. Go ahead. Thank you. You're under. So when, when I say to my law clerk, I have to approve anything you sent out here. It doesn't that mean before you send it out? Your honor, that's not what the statute actually says in this case. However, it doesn't say no penalty shall be assessed until the initial determination is personally approved. It says no penalty shall be assessed unless the initial determination is personally approved. So the operative language is the initial determination of such an assessment is personally approved. I agree. But the statute does not speak to when that must occur. Well, but I just gave you an example. If I say to my law clerk, I need to approve any email. Do I need to say before you send it out or they won't know what I mean? That would be ambiguous, I suppose. You really think so? You really think that if I had a law clerk who then sent it out and said, well, I didn't know you meant before you sent it out, it could have been ambiguous I sent it out. I wouldn't think too much of that law clerk. Your honor, I think implicit under your hypothetical that that could possibly be implied that you meant for that to be approved before it was sent. Well, given all the problems with your reading that it should happen later, don't you think it's implicit here too? I mean, that leads to a lot of stress on what's an initial determination of such assessment. And it needs to be something like this letter, which purports to be a determination of assessment unless contested, and not the kind of letter that I was referring to that acknowledges that it's not operative. But if it reads like a determination, an initial determination, then why isn't it one that needs to be approved? Meaning it's not so much a question of communication. It's just not operative until it's approved. I wouldn't say what the tax court said. It's a question of what is communicated. It's a question of the fact that this determination needs to be approved before it's an operative determination. So Congress's concern, again, was that penalties were being approved or imposed without ever being approved by a supervisor. And so by preventing the assessment of a penalty without supervisory approval, Congress addressed that potential problem. And any ambiguity in the statute with respect to the phrase initial determination relates only to what has to be approved, not when. It's not a question of if there's any ambiguity, it's in is personally approved, whether that incorporates, as I believe it does, the notion of before it becomes operative because that's how one ordinarily speaks. If you have to approve something, there's very little circumstances in which you would say, well, you have to approve something, but it can be after you've done it. I mean, there are people who don't talk that way. The Second Circuit addressed a similar argument in the Chai case. And I'll point the court to footnote 23 of the Chai opinion where the court rejected an argument that the use of the present participle making, that's later in the statute, when the supervisor or the individual is making such determination, the court rejected an interpretation of that language that would have required supervisory approval contemporaneously with the revenue agent's initial determination. And so I would point the court. What footnote are you talking about? Footnote 23 of the Chai decision. All right. Well, and even your time is up. So thank you both very much for your arguments and this interesting little statutory puzzle. And we lay it forth. Harley Davidson v. Commissioner for Internal Revenue is submitted and we are in recess. Thank you. Hearing, hearing, all persons having business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart. For this court stands adjourned.
judges: BERZON< BEA< NGUYEN